IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 23 C 28 |
| v. ) | |
| ) | Magistrate Judge |
| AMERICAN ENGLISH, LLC and ) | Maria Valdez |
| BESSIE SALTER, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Scottsdale Insurance Co.'s Motion for Judgment on the Pleadings [Doc. No. 32]. For the reasons that follow, Plaintiff's motion is granted.

**BACKGROUND**

In this insurance coverage action, Plaintiff Scottsdale Insurance Co. seeks a declaratory judgment that it does not have a duty to defend or indemnify defendant American English, LLC in connection with a lawsuit brought against it by defendant Bessie Salter in Cook County, Illinois.[1] In the Underlying Lawsuit, Salter alleges that she was injured after being struck by a cart and/or the operator of the cart while it was being unloaded from a van owned by Defendant. The "cart" at

---

[1] Although Salter is also a nominal defendant, the term "Defendant" in this opinion refers only to American English, LLC.

issue was a wheeled trunk. Plaintiff has defended Defendant in the Underlying Lawsuit subject to a reservation of rights.

Plaintiff issued to Defendant a commercial general liability insurance policy, No. CPS3058145, effective June 1, 2018 to June 1, 2019.[2] With respect to bodily injury liability coverage, the CGL Policy provides that Plaintiff:

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply . . .

(Compl., Ex. A at 13, ¶ 1.)

According to Plaintiff, it has no duty to defend or indemnify Defendant in the Underlying Lawsuit due to the CGL Policy's Auto Exclusion, which states that Defendant is not insured for:

> "[b]odily injury" . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . "auto" . . . owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" . . . involved the ownership, maintenance, use or entrustment to others of any . . . "auto" . . . that is owned or operated by or rented or loaned to any insured.

(Compl. Ex. A at 16, ¶ 2.g.)

---

[2] The insurance policy is attached to the complaint as Exhibit A and may be considered in this motion. *See Fed. Mut. Ins. Co. v. Coyle Mech. Supply, Inc.*, 983 F.3d 307, 312-13 (7th Cir. 2020) ("Pleadings 'include the complaint, the answer, and any written instruments attached as exhibits.'") (citation omitted).

**DISCUSSION**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *See Hanover Ins. Co. v. R.W. Dunteman Co.*, 51 F.4th 779, 785 (7th Cir. 2022) ("Like a dismissal for the failure to state a claim under Rule 12(b)(6), our task is to determine 'whether the well-pleaded factual allegations viewed in favor of the nonmoving party state a facially plausible claim for relief.'") (citation omitted). A motion for judgment on the pleadings operates like a motion to dismiss, *i.e.*, "the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) ("As with a motion to dismiss, the court views all facts and inferences in the light most favorable to the non-moving party."); *see Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1078 (7th Cir. 2021).

The parties agree that the CGL Policy's terms are to be construed under Illinois law, and thus contract principles govern the policy's interpretation. *See Sanders v. Illinois Union Ins. Co.*, 2019 IL 124565, ¶ 22, 157 N.E.3d 463, 467. Courts are directed to "ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.*; *see Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). "Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be

assumed that every provision was intended to serve a purpose." *Valley Forge Ins.*, 860 N.E.2d at 314.

Clear and unambiguous terms are to be ascribed their plain and ordinary meaning. *Sanders*, 2019 IL 124565, ¶ 23; *see Valley Forge Ins.*, 860 N.E.2d at 314 ("However, if the words used in the policy are ambiguous, they will be strictly construed against the drafter."). "Words are ambiguous if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their meaning, and a court will not search for ambiguity where there is none." *Valley Forge Ins.*, 860 N.E.2d at 314 (citations omitted); *see Sanders*, 2019 IL 124565, ¶ 23.

In determining whether Plaintiff has a duty to defend, the Court must review the CGL Policy in conjunction with the underlying complaint.[3] *See Valley Forge Ins.*, 860 N.E.2d at 314 ("The allegations must be liberally construed in favor of the insured."); *see also Federated Mut. Ins.*, 983 F.3d at 314 ("'Any doubts about the duty to defend are resolved in favor of the insured.'") (citation omitted). "[A] insurer may not justifiably refuse to defend a lawsuit against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Valley Forge Ins.*, 860 N.E.2d at 315. It does not matter "if the allegations are groundless, false, or fraudulent, [or] even if only one of several

---

[3] "Under Illinois law, '[a]n insurer's duty to defend is broader than its duty to indemnify.'" *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 314 (7th Cir. 2020) (citation omitted).

theories of recovery alleged in the complaint falls within the potential coverage of the policy." *Id.*; *see Federated Mut. Ins.*, 983 F.3d at 314 (quoting *Ill. Tool Works Inc. v. Travelers Cas. & Sur. Co.*, 26 N.E.3d 421, 428 (Ill. App. Ct. 2015)) ("'An insurer can only refuse to defend if the allegations of the underlying complaint preclude any possibility of coverage.'"); *Mesa Labs., Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 868 (7th Cir. 2021) ("[I]f even one claim is covered, then the insurer has a duty to defend the entire suit.").

Plaintiff argues that it has no duty to defend or indemnify Defendant in the underlying lawsuit under the terms of the CGL Policy's Auto Exclusion, which precludes coverage for bodily injury arising out of the use of a covered auto, and the definition of "use" includes loading and unloading. The CGL Policy defines "Loading or Unloading" as:

> [T]he handling of property:
>
> a.    After it is moved from the place where it is accepted for movement into or onto an . . . "auto";
>
> b.    While it is in or on an . . . "auto"; or
>
> c.    While it is being moved from an . . . "auto" to the place where it is finally delivered; but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the . . . "auto".

(Compl. Ex. A at 26, ¶ 11.)

According to Plaintiff, the Underlying Lawsuit's allegations fit squarely into the Auto Exclusion because when Salter was injured, the van was being unloaded, Defendant's agent was removing the cart from the van, the cart was not powered by electricity, and the cart struck Salter. Defendant responds that certain of Salter's

allegations take her complaint out of the Auto Exclusion, namely that Defendant's agent "a. Carelessly and negligently allowed a loaded cart to get loose and roll into Ms. Salter; and b. Carelessly and negligently failed to follow the policies and procedures of the Hollywood Casino Aurora when loading and unloading equipment." (Compl. Ex. B at 4, ¶ 4.) Defendant also argues that the Auto Exclusion does not apply because Salter was not struck by the vehicle, its agent was not behind the wheel at the time of the injury, and the circumstances of Salter's injury are unconnected from the vehicle's use.

Defendant, however, acknowledges that the Illinois Supreme Court has defined "use of an automobile" as denoting "its employment for some purpose of the user." *Schultz v. Ill. Farmers Ins. Co.*, 930 N.E.2d 943, 949 (Ill. 2010). "One uses an automobile whenever such use 'is rationally connected to the vehicle for the purpose of providing transportation or satisfying some other related need of the user.'" *Id.* The transportation of equipment is unquestionably connected to the vehicle. Moreover, the Auto Exclusion expressly states that "[u]se includes operation and 'loading and unloading'." (Compl. Ex. A at 16, ¶ 2.g.). The plain, unambiguous language of the CGL Policy excludes injuries caused by the unloading of the van, and the cart that allegedly ran into Salter was being unloaded from the van.

Defendant further maintains that the Auto Exclusion does not apply because when considering Salter's general negligence allegations, the vehicle was merely the location of incidental conduct causing injury, citing *Mount Vernon Fire Ins. Co. v. Heaven's Little Hands Day Care*, 795 N.E.2d 1034 (Ill. App. Ct. 2003), where a child

6

died after being mistakenly left in a day care vehicle. The Court concludes that *Mount Vernon* is inapposite and instead finds that the use of the vehicle was central, not merely incidental, to Salter's alleged injuries. Unlike in *Mount Vernon*, the injury to Salter was not "attenuated from the actual legitimate purpose" of Defendant's vehicle, and the vehicle was not merely the situs of the injury. *Id.* at 1043.

*Mount Vernon* described the "use" of a vehicle in the context of a motor vehicle policy – "[a] causal relation or nexus must exist between the accident or injury and the ownership, use or maintenance of the vehicle in order for the accident or injury to come within the policy coverage; where such nexus or connection is absent, coverage is denied." *Id.* at 1041 (cleaned up, citation omitted) ("The resolution of this issue must be obtained by determining whether the alleged use of the vehicle is reasonably consistent with the inherent nature of the vehicle."). Defendant's use of the vehicle to transport and unload equipment was entirely consistent with the van's nature, and there is a direct nexus between that use and the injuries Salter alleges.

In addition, it is not relevant that the Underlying Lawsuit contains allegations that Defendant negligently failed to follow the venue's policies and procedures when unloading the equipment. Those allegations "are nothing more than rephrasings of the fact that the student [Salter's] injuries arose from [Defendant's] use or operation of a motor vehicle." *Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement*, 741 N.E.2d 253, 254 (Ill. 2000); *see Pactiv Corp. v. Nat'l*

7

*Union Fire Ins. Co.*, 179 F. Supp. 3d 803, 808 (N.D. Ill. 2015) (explaining that injuries caused by trailer doors flying open arose from the trailer's use, even if it were negligently loaded as alleged in the underlying complaint); *see also Zurich Am. Ins.*, 990 F.3d at 1082 ("An underlying complaint's vague allegations and legal labels, without supporting facts, do not trigger a duty to defend.").

## **CONCLUSION**

For the foregoing reasons, Plaintiff Scottsdale Insurance Co.'s Motion for Judgment on the Pleadings [Doc. No. 32] is granted.

**SO ORDERED.**　　　　　　　　　　**ENTERED:**

**DATE:　August 21, 2023**

　　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**